Drake, Ch. J.,
delivered the opinion of tlie court:
On tbe 24th of May, 1875, the claimants recovered a judgment in this court against the United States for $163,140.29, as the proceeds of 1,457 bales of cotton of the claimants, alleged to have been seized and taken in March, 1863, from the so-called Douglas-McHatton plantation, in Washington County, Mississippi, by troops belonging to the command of G-en. T. E. G. Ransom, of the Union Army. An appeal by the defendants from that judgment is now pending in the Supreme Court.
On the 9th of March, Í876, the defendants, under section 1088 of the Revised Statutes, filed in this court a motion for a new trial, based on evidence which was not known to the officers of the Government until after the judgment was rendered, and the character of which is disclosed in twenty affidavits which accompany the motion.
That section authorizes this court to grant a new trial, on motion on behalf of the United States, upon such evidence, cumulative or otherwise, as shall satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States.
At the hearing of this motion no objection was made by the claimants7 counsel to its regularity, or to the competency of the evidence presented by the defendants for the consideration of the court on the motion; and the only matter, therefore, for us to determine is, whether that evidence is sufficient to satisfy us that fraud, wrong, or injustice has been done to the United States in the rendition of said judgment. The decision of this question hinges simply upon the point of the capture and removal of the cotton by the troops of the Union Army.
The evidence which was before the court at the trial tended to prove the fact of the seizure of the cotton in March, 1863, on the Douglas-McHatton plantation, by Union troops forming a part of General Ransom’s command, and its removal thence by them to transports on the Mississippi River; but none of the claimants’ witnesses, except one, named Buford, gave any testimony indicating what particular troops they were. He said that he and one Andrew Crow were, in the spring of 1863, captured on the Bayou Granicus (which intersects the Douglas-McHatton plantation) by a company of Federal soldiers belonging to the Eleventh Illinois Regiment, and were put under *657 guard in a temporary fort made of the Douglas-McIIatton cotton, and remained there till the morning of the next day, when they were sent to General Ransom’s headquarters at American Bend, on the Mississippi -River. This statement is corroborated by Andrew Crow, except that he does not attempt to designate the troops otherwise than as a part of General Ransom’s command. This evidence is important as showing that, whatever variances there might be in the statements of claimants’ witnesses as to the time and place of the alleged seizure, the fact is incontrovertible that if made at all, it was made by the troops who captured those tioo men Buford and Grow.
No further reference than this need be made to the evidence presented by the claimants at the trial; and we turn to that produced by the defendants in support of this motion, which consists of the statements under oath of officers and privates of Companies B, C, andE ofthe Eleventh Illinois Volunteer Infantry, viz: the captain of Company B, who was in command; the first lieutenant of Company O; two corporals of each of those companies; two privates of Company B, eight of Company C, and four of Company E. Of the whole number of twenty, seventeen were found in six counties of the State Illinois, two in the State of Iowa, and one in the State of Nebraska. The following is a brief summary of the evidence contained in their affidavits:
1. The captain of Company B states that in the spring of 1863 he and his company were sent by steamer from Lake Providence, Louisiana, to American Bend, where they disembarked; that his company formed a part of the command of Col. T. E. G. Ransom; that he encamped on the shore at American Bend for two or three days, when he was ordered by the commanding-officer of his regiment to take Companies B,‘ C, and E and proceed into the interior some six or eight miles to some cotton which he would find situated upon the Stephen A. Douglas plantation, and to encamp there and guard that cotton and prevent its capture or destruction. This statement is corroborated by the evidence of the first lieutenant of Company 0, who saw the written orders which the captain had received.
2. In pursuance of the orders so given, Companies B, C, and E repaired to the Douglas-McHatton plantation to a pile of baled cotton under a shed, out of part of which a kind of fort was constructed.
*658 3. The date when those companies went to the plantation is fixed by threeof the affiants as the 21st of March, 1863; each one giving in his affidavit extracts from his diary kept while in the service, showing that as the date.
4. The length of time the companies were encamped at the cotton-pile is fixed by the same three witnesses, whose diaries all show that the companies returned on the 26th of March from the plantation to American Bend. ,
5. Ten of the affiants testify to the capture by the troops, while on the plantation, of two prisoners, w'ho were kept over night, and the next day sent to American Bend ; and three of them state that one of the prisoners was named Buford, and two that one was named Crow.
6. Eleven of the affiants give their estimates of the quantity of cotton which was in. the pile; the lowest being 75 bales, and the highest 450; the average, 222 and a fraction.
7. Every one of the twenty affiants declares, in the most unqualified terms, that during the time the companies were on the plantation, no cotton was removed therefrom; that no teams came there to take any cotton away; and that when the companies left the plantation to return to American Bend, they left the cotton in the same condition as to quantity that it was when they went there.
Taking the evidence on both sides, as we have thus stated it, we cannot for a moment doubt that all the testimony of claimants’ witnesses refers to the same companies of the Eleventh Illinois Volunteer Infantry, and to the same time and place as are referred to by the twenty affiants. There does not seem to us to be any possible room for supposing that the two sets of witnesses testified about two different transactions.
With that point settled conclusively, the simple question before us is whether the twenty affidavits, assuming the facts to be as therein set forth, are sufficient to satisfy us that no cotton was taken by those troops from the Douglas-McHatton plantation. On this point, as the case now stands, we are fully satisfied that none whatever was removed by those troops from that plantation, or by any one else while they were there. Of course it is possible that at another trial the claimants might, by additional evidence, strengthen, and perhaps entirely sustain, their case; but, dealing with the matter in its present shape, we can do no other than declare ourselves prima facie *659 satisfied that gross wrong and injustice, if not fraud, has been done to the United States in the premises, and it is therefore ordered that the motion for a new trial be sustained.
Bichardson, J.:
Although not present when this case was originally determined, and judgment entered for the claimants, I concur in the order granting a new trial.
Nott, J., concurred in the conclusion.